**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| KRISTINA TRAVIS, | : | |
| | : | |
| Individually and on behalf of all others | : | |
| similarly situated, | : | Case No: |
| | : | |
| Plaintiffs, | : | |
| | : | **JURY TRIAL DEMANDED** |
| v. | : | |
| | : | |
| STATE AUTOMOBILE MUTUAL | : | |
| INSURANCE COMPANY, INC., | : | |
| 518 East Broad Street, Columbus, OH 43215; | : | |
| | : | |
| STATE AUTO INSURANCE COMPANY, | : | |
| 518 East Broad Street, Columbus, OH 43215; | : | |
| | : | |
| MILBANK INSURANCE COMPANY, | : | |
| 1300 Woodland Avenue, West Des Moines, IA | : | |
| 50265; | : | |
| | : | |
| and JANE DOES 1-10, | : | |
| 518 East Broad Street, Columbus, OH 43215; | : | |
| | : | |
| Defendants. | : | |
| | : | |

## <u>CLASS ACTION COMPLAINT</u>

Now comes the Plaintiff, Kristina Travis, individually and on behalf of all others similarly situated, and alleges as follows:

### INTRODUCTION

1.      This case is about a scheme perpetrated by a group of insurance companies and their employees, designed to trick unsuspecting consumers and their brokers into purchasing lines of phantom insurance within Dwelling Fire policies, which caused the Plaintiff policyholders to pay for coverage that was already included with the policy.

2.     This complex, closed-end scheme, which ran from 2015 to July 2021, involved a series of affirmative misrepresentations communicated through Defendants' website portal and on the Declarations Page of each Dwelling Fire policy.

3.     Starting in 2015, Defendants schemed to roll out a new digital platform constructed as a website portal called State Auto Connect (hereinafter "Connect Platform"). The Connect Platform was publicly advertised as an advancement in technology, but in reality, it was the centerpiece of an elaborate scam.

4.     The Connect Platform included check-box selections for lines of coverages that did not belong among the choices listed because these lines were already included at no extra cost. These options existed only to enrich Defendants because the effect of checking certain boxes in the Connect Platform was to increase the cost of premium payments without any corresponding enlargement of coverage or increased risk to Defendants.

5.     Separate and apart from the Connect Platform, Defendants were able to pull off this scheme because they uniformly omitted and misrepresented material information on each policy's Declarations Page. Specifically, Defendants fraudulently omitted the existence of coverage for "B. Other Structures," "D. Fair Rental Value," and "E. Additional Living Expenses," when this coverage should have been listed automatically on each policy's Declarations Page because these supplementary coverages were included in the base purchase of "A. Dwelling" coverage.

6.     The effect of Defendants' scheme was that policyholders and brokers who wanted to purchase B, D & E coverage were deceived into paying an extra amount of premiums for these lines even though the coverage itself was automatically included in exchange for the premium paid for purchasing Section A coverage.

7.     For years, Defendants used the Connect Platform to steal money from Plaintiff and the Class. Each fraudulently induced transaction for the purchase of B, D & E coverage through the Connect Platform constituted an act of wire fraud under 18 U.S.C. § 1343. Each physical and/or electronic mailing sent by Defendants containing a policy Declarations Page with fraudulent misrepresentations about coverage constituted an act of mail and/or wire fraud under 18 U.S.C. §§ 1341, 1343. Together, these multiple acts of mail and wire fraud constitute "a pattern of racketeering" under 18 U.S.C. § 1962(c).

8.     Defendants have effectively admitted their scheme through subsequent actions taken in July 2021. Specifically, State Auto deceitfully announced that it was making "updates" to the Connect Platform and rolling out "revised" Declarations Pages. The truth is that Defendants were attempting to cover up their racketeering conspiracy.

9.     All told, it is estimated that Defendants collected tens of thousands of illegal premium payments through the Connect Platform between 2016 and 2021 totaling millions of dollars in funds misappropriated from Plaintiff and the Class.

10.     Despite abandoning the scheme in July 2021, Defendants refused to reimburse the Plaintiff policyholders for the ill-gotten gains Defendants collected through the Connect Platform prior to July 2021.

11.     As a result of Defendants' predicate acts of racketeering conduct, described in more detail below, Plaintiff has been forced to commence the present litigation on behalf of herself and the proposed Class.

12.     Plaintiff thus brings this class action complaint, on behalf of herself and all others similarly situated, alleging claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), as well as claims under state law for breach of contract, unfair and deceptive trade

practices, unjust enrichment, money had and received, and constructive trust. Plaintiff asks this Court to award her and the Plaintiff Class treble damages, attorneys' fees, and the other relief to which they are entitled under federal and state law.

## JURISDICTION AND VENUE

13.     This Court has subject matter jurisdiction over Plaintiff's RICO claims under 18 U.S.C. § 1964(c) and 28 U.S.C. § 1331.

14.     This Court also has subject matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), because there are 100 or more Class Members and the aggregate amount in controversy exceeds $5,000,000.00 exclusive of interest and costs. Additionally, at least one Class member is a citizen of a state different from the corporate domiciles of the Defendants.

15.     This case is properly maintainable as a class action pursuant to and in accordance with Rule 23(a) of the Federal Rules of Civil Procedure in that:

- The class, which includes an unknown number of persons but certainly more than 100, is so numerous that joinder of all members is impractical;

- There are substantial questions of law and fact common to the class including those set forth in greater particularity in Paragraph 105 herein; and

- This case is properly maintainable as a class action pursuant to Rule 23(b) of the Federal Rules of Civil Procedure, in that:

    (a)     questions of law and fact enumerated below, which are all common of the class, predominate over any questions of law or fact affecting only individual members of the class;

    (b)     a class action is superior to any other type of action for the fair and efficient adjudication of the controversy;

    (c)     the relief sought in this class action will effectively and efficiently provide relief to all members of the class; and

      (d)     there are no unusual difficulties foreseen in the management of this class action.

16.     Venue is proper in this Court under 18 U.S.C. § 1391(b) and 18 U.S.C. § 1965(a) because Defendants transact their affairs in this district; a substantial portion of the events giving rise to this suit occurred in this district; and a substantial part of property that is the subject of this action is situated in this district.

17.     The Court has personal jurisdiction over all the Defendants, who have at least minimum contacts with the Commonwealth of Pennsylvania because the Defendants conduct business there and have availed themselves of Pennsylvania's markets through promotion, sales and marketing efforts as well as the Defendants' issuance of insurance policies and collection of premiums within Pennsylvania to and from residents of Pennsylvania.

18.     The Court has supplemental jurisdiction over state claims under 28 U.S.C. § 1367.

## THE PARTIES

19.     Plaintiff, Kristina Travis, is a resident of Bethlehem, Pennsylvania who purchased and entered into approximately thirty-nine (39) Dwelling Fire insurance contracts with Defendants, State Auto Insurance Company and Milbank Insurance Company.

20.     Defendant State Auto Mutual Insurance Company, Inc. (hereinafter "SAMIC"), informally known as State Auto Group, provides personal and commercial property and casualty insurance through a constellation of pooled subsidiaries located throughout the United States. Defendant SAMIC was and is a corporation organized and existing under the laws of the State of Ohio with its principal office at 518 E. Broad Street, Columbus, OH. At all relevant times, Defendant SAMIC has done business in the Commonwealth of Pennsylvania. Upon information and belief, Defendant SAMIC was responsible for the design, construction, implementation, and rollout of the Connect Platform, the website portal that Defendants used to carry out the scheme.

21.     Defendant State Auto Insurance Company (hereinafter "SAIC") was and is a corporation organized and existing under the laws of the state of Ohio with its principal office at 518 E. Broad Street, Columbus, OH. At all relevant times, Defendant SAIC has done business in the Commonwealth of Pennsylvania. Upon information and belief, Defendant SAIC is a subsidiary of State Auto Financial Corporation, which itself is a subsidiary of Defendant SAMIC. Upon information and belief, Defendant SAIC issued and sold the Dwelling Fire insurance policies that are at issue in this litigation.

22.     Defendant Milbank Insurance Company (hereinafter "Milbank" and collectively with SAMIC and SAIC, "State Auto"), was and is a corporation organized and existing under the laws of the state of Iowa with its principal office at 1300 Woodland Avenue, West Des Moines, IA. At all relevant times, Defendant Milbank has done business in the Commonwealth of Pennsylvania. Upon information and belief, Defendant Milbank is a subsidiary of State Auto Financial Corporation, which itself is a subsidiary of Defendant SAMIC. Upon information and belief, Defendant SAIC provided the underwriting and coverage for the Dwelling Fire insurance policies that are at issue in this litigation.

23.     Defendants JANE DOES 1-5 are high level employees of State Auto who, from 2015-2021, developed and oversaw the implementation of the fraudulent scheme to illegally collect phony premiums through the Connect Platform, and then in or about July 2021, these JANE DOE Defendants attempted to cover up the illegal scheme by taking actions in furtherance of the conspiracy.

24.     Defendants JANE DOES 6-10 are lower level employees of State Auto who from 2015-2021 implemented and carried out the fraudulent scheme to collect phony premiums by adding illegal check box options to the Connect Platform and omitting disclosures about

coverages on each Policy's Declarations Page, and then from March to July 2021, these JANE DOE Defendants added new disclosures to try to cover up the existence of the scheme.

## FACTS

**State Auto's Connect Platform**

25.     In 2015, State Auto embarked on a five- to seven-year project to build a new technology platform for policyholders and brokers. This was known as the Connect Platform.

26.     The Connect Platform was first launched in Arizona on October 12, 2016.

27.     State Auto launched the Connect Platform in Pennsylvania in February 2018.

28.     In September 2018, State Auto launched the Connect Platform in Connecticut, Maryland, Massachusetts, and North Carolina.

29.     Upon information and belief, as of September 2018, State Auto had launched and was utilizing the Connect Platform to sell insurance in more than thirty (30) states.

30.     With the rollout of the Connect Platform, State Auto touted itself as a leading digital provider of home insurance. In actuality, State Auto was abusing the Connect Platform to steal money from customers.

31.     Defendants embedded misrepresentations into the Connect Platform and then used each Policy's Declarations Page to further exploit these distortions in order to sell illusory insurance and pilfer added premiums from Plaintiff and the Class.

**State Auto's Dwelling Fire Policies**

32.     State Auto markets its Dwelling Fire policy as beneficial for people who own rental properties and/or seasonal, vacation, or secondary homes. State Auto's Dwelling Fire policies purport to provide coverage for damage caused by wind, lightning, hail, fire, explosion, and vandalism.

33.     State Auto does not require that a policyholder's primary residence be insured with State Auto in order to purchase a Dwelling Fire policy.

34.     State Auto's Dwelling Fire policy includes approximately five lines of coverage within the policy itself, comprised of the following:

    A.    "Dwelling" consisting of coverage for the dwelling located on the property;

    B.    "Other Structures" consisting of coverage for other structures on the property set apart from the dwelling, such as a garage, driveway, pool house, or gazebo;

    C.    "Personal Property" consisting of coverage for personal property usual to the occupancy as a dwelling;

    D.    "Fair Rental Value" consisting of coverage for the fair rental value if the property is unfit for use due to a peril insured against; and,

    E.    "Additional Living Expense" consisting of coverage for any necessary increase in living expenses incurred due to a peril insured against.

35.     State Auto structured its Dwelling Fire policy such that 10% of the Section A *Dwelling* coverage was automatically included for Coverage B *Other Structures* and 20% of the Section A *Dwelling* coverage was automatically included for Coverages D & E (*Fair Rental Value* and *Additional Living Expense*).

36.     In other words, State Auto **<u>automatically</u>** included insurance coverage for Sections B, D & E within the base purchase of Section A.

37.     Therefore, any policyholder who purchased Section A. *Dwelling* coverage was automatically entitled to lines of coverage under Sections B, D & E at no additional cost or premium.

38.     However, as will be explained in more detail below, Defendants intentionally concealed material disclosures about the coverages that were automatically included with the purchase of Section A, and these misrepresentations caused significant financial injury to Plaintiff and the Class.

**State Auto's Sale of Dwelling Fire Policies on the Connect Platform Was Misleading**

39.     State Auto sold Dwelling Fire policies to consumers through the Connect Platform.

40.     Upon information and belief, from 2016 to July 2021, the quote screen for the sale of Dwelling Fire policies on the Connect Platform appeared as follows:



41.     The above quote screen does not notify the consumer or broker that 10% of the Section A *Dwelling* coverage was automatically included for Section B *Other Structures*. Similarly, the above quote screen does not notify the consumer or broker that 20% of the Section A *Dwelling* coverage was automatically included for Sections D & E *Fair Rental Value* and *Additional Living Expense*.

42.     To the contrary, the above quote screen conveys the message that if one wants his or her Dwelling Fire policy to contain Sections B, D & E coverage, then he or she must check the box next to these lines in order to make sure they are included.

43.     The consequence of selecting the above check boxes for Sections B, D & E coverage was that the total cost of the premium on the policy would increase, although in reality, there would be no corresponding increase in coverage.

44.     Policyholders were paying extra for coverage they were already entitled to.

45.     Significantly, the above quote screen conveyed the message that if one does not check the boxes for Sections B, D & E coverage, then the Dwelling Fire policy will NOT include any coverage for Sections B, D & E.

46.     The fact that the check boxes on the Connect Platform even allowed for the purchase of coverage for Sections B, D & E without disclosing that Sections B, D & E coverage was already included, constitute material misrepresentations that were intended to dupe, and did in fact dupe, unsuspecting consumers and brokers into purchasing coverage that was already included.

47.     Based on the design of the Connect Platform, which failed to include material disclosures about the Sections B, D & E coverage that was automatically included in Section A, the mere existence of the check boxes for Sections B, D & E coverage on the Connect Platform prior to July 2, 2021 was a total sham, designed to deceive consumers and enrich Defendants to the extreme financial detriment of Plaintiff and the Class.

**State Auto's Coverage Disclosures on Policy Declarations Pages Were Misleading**

48.     An insurance Declarations Page is a document provided by an insurance company that summarizes the coverage provided by the insurance policy. The Declarations Page contains all the most pertinent information regarding the home insurance.

49.     Prior to July 2, 2021, the State Auto Declarations Pages for Dwelling Fire policies did not notify the consumer or broker that 10% of the Section A *Dwelling* coverage was

automatically included for Section B *Other Structures*. Similarly, the Declarations Pages did not notify the consumer or broker that 20% of the Section A *Dwelling* coverage was automatically included for Sections D & E *Fair Rental Value* and *Additional Living Expense*.

50. If a consumer selected the check boxes on the Connect Platform for Sections B, D & E coverage, then his or her Declarations Page appeared as follows:

## Your Coverages

| Property Coverages | Limit | Premium |
|---|---|---|
| A. Dwelling | $190,500 | $333.80 |
| B. Other Structures | $19,050 | $15.93 |
| C. Personal Property | $1,000 | $9.64 |
| D & E. Fair Rental and Additional Living Expense | | $37.06 |
| **Liability Coverages** | **Limit** | **Premium** |
| L. Liability | $300,000 | Included |
| M. Medical Payments | $1,000 | Included |

*Coverage at the above described location is provided only where a limit of liability or a premium is stated.*

51. The above Declarations Page contains numerous material misrepresentations. One material misrepresentation consists of the dollar figure of $15.93 that appears in the row marked "B. Other Structures" and the column marked "Premium." This is a material misrepresentation because it shows an additional charge being due and owing for the same coverage under Section B that is automatically included in the base premium for Section A, which is $333.80 in the above example.

52. Another material misrepresentation on the above Declarations Page consists of the dollar figure of $37.06 that appears in the row marked "D & E. Fair Rental and Additional Living Expense" and the column marked "Premium." This is a material misrepresentation because it shows an additional charge being due and owing for the same coverage under Sections

D & E that is automatically included in the base premium for Section A, which is $333.80 in the above example.

**The B, D & E Coverage Sold on the Connect Platform was Illusory**

53.     Defendants' scheme was complete upon Defendants' policy of capping the coverage for Sections B, D & E to the amount automatically included in Section A (10% for B; and 20% for D & E) (hereafter the "Cap Policy"). The consequence of the Cap Policy was that, at all relevant times prior to July 2021, Defendants bore no added risk for the illusory coverage Plaintiffs purchased for Sections B, D & E lines on Dwelling Fire policies through the Connect Platform.

54.     State Auto's Cap Policy capped the coverage available for Dwelling Fire policies to the amount automatically included with the purchase of Section A, which was 10% of Section A for Section B *Other Structures* and 20% of Section A for Sections D & E *Fair Rental Value* and *Additional Living Expenses*.

55.     Upon information and belief, regardless of the Cap Policy, coverage was always provided in the amount shown on each policy's Declarations Page, which for Plaintiff and the Class was always 10% of Section A for Section B *Other Structures* and 20% of Section A for Sections D & E *Fair Rental Value* and *Additional Living Expenses*.

56.     State Auto's scheme caused the coverage to be illusory because, regardless of whether a consumer paid extra or not, the coverage was included and Defendants bore no risk on the B, D & E lines separately sold through the Connect Platform.

57.     The following hypothetical illustrates how the coverage was illusory. If, for example, a consumer failed to select the check box for B *Other Structures* on the Connect

Platform, but did check the box for Sections D & E, then the consumer's Declarations Page would appear as follows:

## Your Coverages

| Property Coverages | Limit | Premium |
|---|---|---|
| A. Dwelling | $466,300 | $964.54 |
| D & E. Fair Rental and Additional Living Expense | | $115.35 |
| **Liability Coverages** | **Limit** | **Premium** |
| L. Liability | $300,000 | Included |
| M. Medical Payments | $1,000 | Included |
| | **Total Premium** | **$1,079.89** |

*Coverage at the above described location is provided only where a limit of liability or a premium is stated.*

58.     The above Declarations Page contains a material misrepresentation to the extent it shows no coverage for Section B *Other Structures* because the policy automatically included coverage totaling 10% of Section A for Section B, without the need for any additional premium payment towards Section B.

59.     State Auto's Dwelling Fire policy Declarations Page is all the more deceptive because each page contains a warning message that reads: "Coverage at the above described location is provided only where a limit of liability or a premium is stated." This warning is a false statement because Defendants repeatedly failed to disclose the coverages for Sections B, D & E that were automatically included with the purchase of Section A. Moreover, the lack of disclosure was material to the policyholder's decision whether to purchase B, D & E coverage through the Connect Platform.

**In July 2021, State Auto Effectively Admitted that it had been Stealing Money by Announcing "Changes" to the Connect Platform and Declarations Pages**

60.     Defendants' attempted cover-up occurred in July 2021 and consisted of three manipulations: (a) new coverage disclosures on the Connect Platform; (b) new coverage

disclosures on each policy's Declarations Page; and (c) the functional elimination of Defendants' Cap Policy.

61.     On July 2, 2021, State Auto sent out a marketing e-mail regarding its Dwelling Fire Policies. A true and correct copy of this marketing e-mail is attached hereto at Exhibit A (hereafter "July 2, 2021 Marketing E-mail").

62.     The July 2, 2021 Marketing E-mail stated:

> A Dwelling Fire policy is designed for customers with rental properties and/or seasonal, vacation, or secondary homes, as it provides coverage for damage from wind, lightning, hail, fire, explosion, and vandalism.*
>
> But, did you know our base Dwelling Fire policy <u>automatically</u> includes:
>
> - **Coverage for other structures** (*10% of Coverage A*)
>
> - **Coverage for fair rental value and additional living expense** (*20% of Coverage A*)**
>
> To ensure you have access to this information when making the best decision for your customers' coverage needs, **we've enhanced how Coverage B and Coverage D & E are displayed on the quote screen in State Auto Connect®.**
>
> Beginning today, when quoting a DP2 or DP3, you'll be able to view the Schedule of F. Other Coverages, <u>which are included at no additional cost</u>. When quoting DP1, Connect will present Schedule of E - Other Coverages (*no additional premium*).
>
> …
>
> We've also added "helper text" for Coverage B - Other Structures and Coverage D - Fair Rental Value to clarify what is included in our base Dwelling Fire policy. Just click the question mark icon next to the coverage.
>
> …
>
> In the coming weeks, we'll begin rolling out revised Declaration Pages to clearly display what's included in our base Dwelling Fire policy.

*See* Exhibit A (bold and italics emphasis in original and underline emphasis added).

63.     The reason that State Auto was asking "Did you know" about what was automatically included in the base Dwelling Fire policy is because State Auto knew that its policyholders and brokers DID NOT KNOW what was included.

64.     The reason that State Auto's policyholders and brokers DID NOT KNOW what was included in the base Dwelling Fire policy is because Defendants purposefully concealed this information through wrongful misrepresentations on the Connect Platform and each policy's Declarations Page.

65.     The proper disclosures regarding what was automatically included with the purchase of Section A were material to the decision about whether a policyholder would check the box to purchase Sections B, D & E lines of coverage through the Connect Platform.

66.     No reasonable policyholder would check the box and pay extra for coverage that was already included.

67.     In selling Dwelling Fire policies to Plaintiff and the Class, State Auto wrongfully misrepresented coverage amounts and failed to make material disclosures on the Connect Platform and in each policy's Declarations Page.

68.     Defendants' acts of changing its policies and adding fresh disclosures in July 2021 amounts to an admission that the Sections B, D & E check boxes never belonged on the Connect Platform in the first place and that each Declarations Page on Dwelling Fire policies should have always included disclosures for the Sections B, D & E coverage that had always come automatically with the purchase of  Section A. *Dwelling*.

69.     State Auto's intentional failure to make the proper disclosures regarding the sale of Dwelling Fire policies through the Connect Platform prior to July 2, 2021 caused injury and damage to Plaintiff and the Class.

70.     Plaintiff and the Class were injured and their damages consist of the monies they paid for coverage that was already provided.

71.     Beginning July 2, 2021, the Connect Platform's quote screen for Dwelling Fire policies was changed so that it appeared as follows:



72.     The primary change is the disclosure that appears when the consumer or broker clicks the question marks that appears next to "Coverage B – Other Structures."

73.     The new disclosure for Coverage B, as of July 2, 2021 stated as follows: "10% of Cov A included. Addl. Limits can be purchased."

74.     Beginning July 2, 2021, State Auto began disclosing on the Connect Platform that 10% of Coverage A is automatically included for Coverage B *Other Structures* and 20% of Coverage A is automatically included for Coverage D *Fair Rental Value*.

75.     In addition, beginning July 2, 2021, State Auto began disclosing that additional limits can be purchased for both B and D. In other words, State Auto functionally eliminated the Cap Policy in order to cover up the scheme.

76.     Sometime after July 2, 2021, State Auto modified the Declarations Pages on each Dwelling Fire policy to provide additional disclosures about the Sections B, D & E coverages that were automatically included with the purchase of Section A.

77.     After July 2, 2021, if a consumer or broker DOES NOT check the boxes for Sections B, D & E coverage on the Connect Platform, the corresponding Declarations Page appears as follows:

## Your Coverages

| Property Coverages | Limit | Premium |
|---|---|---|
| A. Dwelling | $280,000 | $298.60 |
| B. Other Structures | $28,000 | $26.21 |
| D & E. Fair Rental and Additional Living Expense | $56,000 | $52.65 |
| **Liability Coverages** | **Limit** | **Premium** |
| L. Liability | $300,000 | Included |
| M. Medical Payments | $1,000 | Included |
| | **Total Premium** | **$377.46** |

*Coverage at the above described location is provided only where a limit of liability or a premium is stated.*

## Coverage included by F. Other Coverages, at no additional cost:

| Coverages | Limit |
|---|---|
| Other Structures as shown in Coverage B. | 10% of Coverage A limit, as additional insurance |
| Debris Removal | Included in the limit that applies to damaged property |
| Improvements, Alterations and Additions | 10% of Coverage C limit, as additional insurance |
| Worldwide Coverage | 10% of Coverage C limit. Use of this coverage reduces Coverage C limit. |
| Fair Rental and Additional Living Expense | 20% of Coverage A limit, as additional insurance |

78.     The above Declarations Page includes disclosures about Sections B, D & E coverages that are automatically included "at no additional cost" and reflects how Declarations Pages SHOULD have looked at all times prior to July 2, 2021.

**Plaintiff Kristina Travis Purchased Dwelling Fire Policies Through the Connect Platform**

79.     Between 2019 and 2021, Plaintiff Kristina Travis purchased thirty-nine (39) Dwelling Fire Policies through the Connect Platform. True and correct copies of the Declarations Pages for all thirty-nine policies are attached hereto at Exhibit B.

80.     On July 1, 2019, Plaintiff purchased thirteen Dwelling Fire policies through the Connect Platform.

81.     On July 1, 2019, as a direct and proximate result of the scheme described above, Plaintiff was duped into purchasing Sections B, D & E coverage through the Connect Platform for each of these thirteen Dwelling Fire policies.

82.     On July 1, 2019, the State Auto Defendants, in their regular course of business, issued to Plaintiff thirteen Dwelling Fire insurance policies, bearing policy numbers 1000549274, 1000549289, 1000549242, 1000549345, 1000549199, 1000549337, 1000549208, 1000549264, 1000549312, 1000549282, 1000549302, 1000549326, and 1000549250.

83.     On July 1, 2019, Plaintiff paid premiums of $16.18 for Section B *Other Structures* coverage and $37.79 for Sections D & E *Fair Rental Value* and *Additional Living Expenses* on Policy Numbers 1000549274, 1000549289, 1000549242, 1000549345, 1000549199, 1000549337, and 1000549208. These fraudulently induced transactions constituted seven separate acts of wire fraud by Defendants under 18 U.S.C. § 1343.

84.     On July 1, 2019, Plaintiff paid premiums of $15.48 for Section B *Other Structures* coverage and $36.60 for Sections D & E *Fair Rental Value* and *Additional Living Expenses* on Policy Numbers 1000549264, 1000549312, 1000549282, 1000549302, 1000549326, and 1000549250. These fraudulently induced transactions constituted six separate acts of wire fraud by Defendants under 18 U.S.C. § 1343.

85.     On or about July 1, 2019, Defendants mailed to Plaintiff thirteen (13) Declarations pages containing fraudulent misrepresentations and omissions regarding coverages on Dwelling Fire policy numbers 1000549274, 1000549289, 1000549242, 1000549345, 1000549199, 1000549337, 1000549208, 1000549264, 1000549312, 1000549282, 1000549302, 1000549326, and 1000549250. Each of these mailings constituted a separate act of mail/wire fraud by Defendants under 18 U.S.C. §§ 1341, 1343.

86.     On May 23, 2020, Plaintiff purchased thirteen Dwelling Fire policies through the Connect Platform.

87.     On May 23, 2020, as a direct and proximate result of the scheme described above, Plaintiff was duped into purchasing Sections B, D & E coverage through the Connect Platform for each of her thirteen Dwelling Fire policies.

88.     On May 23, 2020, the State Auto Defendants, in their regular course of business, issued to Plaintiff thirteen Dwelling Fire insurance policies, bearing policy numbers 1000549274, 1000549289, 1000549242, 1000549345, 1000549199, 1000549337, 1000549208, 1000549264, 1000549312, 1000549282, 1000549302, 1000549326, and 1000549250.

89.     On May 23, 2020, Plaintiff paid premiums of $17.23 for Section B *Other Structures* coverage and $40.13 for Sections D & E *Fair Rental Value* and *Additional Living Expenses* on Policy Numbers 1000549274, 1000549289, 1000549242, 1000549345, 1000549199, 1000549337, and 1000549208. These fraudulently induced transactions constituted seven separate acts of wire fraud by Defendants under 18 U.S.C. § 1343.

90.     On May 23, 2020, Plaintiff paid premiums of $16.50 for Section B *Other Structures* coverage and $38.56 for Sections D & E *Fair Rental Value* and *Additional Living Expenses* on Policy Numbers 1000549264, 1000549312, 1000549282, 1000549302,

1000549326, and 1000549250. These fraudulently induced transactions constituted six separate acts of wire fraud by Defendants under 18 U.S.C. § 1343.

91.     On or about May 23, 2020, Defendants mailed to Plaintiff thirteen (13) Declarations pages containing fraudulent misrepresentations and omissions regarding coverages on Dwelling Fire policy numbers 1000549274, 1000549289, 1000549242, 1000549345, 1000549199, 1000549337, 1000549208, 1000549264, 1000549312, 1000549282, 1000549302, 1000549326, and 1000549250. Each of these mailings constituted a separate act of mail/wire fraud by Defendants under 18 U.S.C. §§ 1341, 1343.

92.     On April 19, 2021, Plaintiff purchased thirteen Dwelling Fire policies through the Connect Platform.

93.     On April 19, 2021, as a direct and proximate result of the scheme described above, Plaintiff was duped into purchasing Sections B, D & E coverage through the Connect Platform for each of her thirteen Dwelling Fire policies.

94.     On April 19, 2021, the State Auto Defendants, in their regular course of business, issued to Plaintiff thirteen Dwelling Fire insurance policies, bearing policy numbers 1000549274, 1000549289, 1000549242, 1000549345, 1000549199, 1000549337, 1000549208, 1000549264, 1000549312, 1000549282, 1000549302, 1000549326, and 1000549250.

95.     On April 19, 2021, Plaintiff paid premiums of $15.93 for Section B *Other Structures* coverage and $37.06 for Sections D & E *Fair Rental Value* and *Additional Living Expenses* on Policy Numbers 1000549274, 1000549289, 1000549242, 1000549345, 1000549199, 1000549337, and 1000549208. These fraudulently induced transactions constituted seven separate acts of wire fraud by Defendants under 18 U.S.C. § 1343.

96.     On April 19, 2021, Plaintiff paid premiums of $15.26 for Section B *Other Structures* coverage and $35.60 for Sections D & E *Fair Rental Value* and *Additional Living Expenses* on Policy Numbers 1000549264, 1000549312, 1000549282, 1000549302, 1000549326, and 1000549250. These fraudulently induced transactions constituted six separate acts of wire fraud by Defendants under 18 U.S.C. § 1343.

97.     On or about April 19, 2021, Defendants mailed to Plaintiff thirteen (13) Declarations pages containing fraudulent misrepresentations and omissions regarding coverages on Dwelling Fire policy numbers 1000549274, 1000549289, 1000549242, 1000549345, 1000549199, 1000549337, 1000549208, 1000549264, 1000549312, 1000549282, 1000549302, 1000549326, and 1000549250. Each of these mailings constituted a separate act of mail/wire fraud by Defendants under 18 U.S.C. §§ 1341, 1343.

**State Auto's Scheme Injured the Plaintiff Class**

98.     Between 2016 and July 2021, Plaintiff and Class Members paid illegal and excessive additional premiums through the Connect Platform in exchange for illusory B, D & E coverage on Dwelling Fire policies.

99.     Plaintiff and all Class Members were injured because they were duped into paying for B, D & E coverage that they were entitled to receive automatically at no additional charge.

## CLASS ALLEGATIONS

100.    Plaintiff Kristina Travis brings this action, on behalf of herself and all others similarly situated, for the purpose of asserting the claims alleged in this complaint on a common basis.

101.    Plaintiff proposes a nationwide Class defined as:

> All State Auto Dwelling Fire policyholders who purchased "B. Other Structures" coverage and/or "D. Fair Rental Value" and "E.

Additional Living Expenses" coverages through the Connect Platform prior to July 2, 2021.

102.     Plaintiff reserves the right to modify or amend the definition of the proposed Class before the Court determines whether certification is appropriate.

103.     Excluded from the Plaintiff Class are:

(a)   Defendants and any entities in which any Defendant has a controlling interest;

(b)   Any entities in which Defendants' officers, directors, or employees are employed and any of the legal representatives, heirs, successors or assigns of any Defendant;

(c)   The Judge to whom this case is assigned and any member of the Judge's immediate family and any other judicial officer or employees assigned to this case;

(d)   Actual identifiable claims for insurance benefits that have already arisen that may be payable under the terms of said Dwelling Fire policies;

(e)   Any attorneys representing the Plaintiff or the Class; and

(f)   All governmental entities.

104.     Numerosity – Fed. R. Civ. P. 23(a)(1). The Class Members are so numerous that their individual joinder is impracticable. The exact number or identification of the Class Members is presently unknown, but it is believed that there are well over 100 and most likely tens of thousands of Class Members. The identity of the Class Members is ascertainable.  In addition to registration rolls maintained by the Defendants, the Class Members may be located and informed of the pendency of this action by a combination of electronic bulletins, e-mail, direct mail and public notice, or other means.

105.     Commonality – Fed. R. Civ. P. 23(a)(2). There are questions of law or fact that are common to the Class, and the relief sought is common to all members of the Class. Common legal and factual questions arise from Defendants' scheme to collect excessive premiums in

exchange for phantom insurance coverage upon which Defendants bore no risk. The resolution of these legal and factual questions will determine whether all members of the Class are entitled to damages payable that reflect all premium payments made for B, D & E coverage purchased through the Connect Platform prior to July 2, 2021.

106.   Typicality – Fed. R. Civ. P. 23(a)(3). The claims and defenses of the representative parties are typical of the claims and defenses of the Class. All Plaintiff Class members have the same claims, i.e., that SAMIC and the JANE DOE Defendants are liable under 18 U.S.C. § 1964, that SAIC and Milbank are in breach of contract, and that all corporate Defendants have committed unfair and deceptive trade practices, have been unjustly enriched, have improperly retained money had and received, and hold Plaintiff's and the Class's money in a constructive trust, causing injury and damage to Plaintiff and Class Members. If Plaintiff succeeds on her claims, that ruling will likewise benefit every other member of the Class. Any defenses that the Defendants raise are also likely to be raised equally against Plaintiff and all members of the Class.

107.   Adequacy – Fed. R. Civ. P. 23(a)(4); 23(g)(1). Plaintiff is an adequate representative of the Class because she fits the class definition and her interests do not conflict with the interests of the Class Members she seeks to represent. Plaintiff will prosecute this action vigorously for the benefit of the entire Class and agrees to participate in discovery and attend any Court hearings required of her. Plaintiff is represented by the law firm Golomb Spirt Grunfeld, P.C., who are experienced and able attorneys with more than 35 years of combined experience in handling and litigating complex class actions. This law firm has detailed knowledge about Defendants' scheme and the applicable law, and they have done substantial work identifying and investigating the potential claims in this action. This law firm has the resources necessary to

represent the Class and will commit those resources to this case to ensure that the interests of the Class will be protected.

108.     Predominance and Superiority – Fed. R. Civ. P. 23(b)(3). Class certification is appropriate under Fed. R. Civ. P. 23(b)(3) because common questions of law or fact predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The principal legal and factual questions in this case—whether SAMIC and the JANE DOE Defendants are liable under 18 U.S.C. § 1964, whether SAIC and Milbank are in breach of contract and whether all corporate Defendants have committed unfair and deceptive trade practices and have unlawfully retained millions of dollars in premium payments for illusory coverage—are common to all Class Members.

109.     Once these questions are answered in the affirmative, all that will be required is the mechanical calculation of damages owed to each Plaintiff Class Member. These calculations will be easily done based on the information contained in Defendants' records. The Plaintiff Class Members have little interest in individually controlling the prosecution of separate actions. There is no other litigation already commenced by or against members of the Class involving any of the same issues.

110.     The large size of the Plaintiff Class, likely in the thousands, if not tens of thousands, and the minimal difficulties likely to be encountered in the management of the action as a class action, further support the conclusion that this case should be maintained as a class action.

111.     Joinder of all class members would be impractical, as would the maintenance of thousands, if not tens of thousands of separate lawsuits, each brought to resolve identical legal

and factual questions. By contrast, there will be minimal difficulties in maintaining the action as a class action, including in terms of calculating damages.

112.     In view of the complexities of the issues and the expenses of litigation, the separate claims of individual class members are insufficient to support separate actions. Many members of the Plaintiff Class have been cheated out of only a few hundred dollars, or even less. For example, the Plaintiff Kristina Travis was only swindled out of a couple thousand dollars in total premium payments. The cost to bring litigation on behalf of each class member far exceeds the amount by which each individual plaintiff was damaged.

113.     Further, individual litigation has the potential to result in inconsistent or contradictory judgments. A class action in this case presents fewer management problems and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.  The class, as defined herein, is ascertainable from the Defendants' records or from records which the Defendants have access and control.

**COUNTS**

**<u>COUNT ONE – VIOLATION OF 18 U.S.C. § 1962(c)</u>**

**Against Defendants SAMIC and JANE DOES 1-10**

114.     Plaintiff incorporates by reference the allegations in paragraphs 1-113.

115.     RICO creates a private right of action for "[a]ny person injured in his business or property by reason of a violation of [18 U.S.C. § 1962]." 18 U.S.C. § 1964(c). Under 18 U.S.C. § 1962(c), it is "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." Defendants SAMIC and JANE DOES 1-10 violated this provision of 18 U.S.C. § 1962.

116.     An "enterprise" for purposes of RICO "includes any . . . partnership, corporation, association, or other legal entity." 18 U.S.C. § 1961(4). SAIC and Milbank are both legal entities that together form an association-in-fact enterprise joined for the purpose of selling, marketing, and administering Dwelling Fire insurance policies through the Connect Platform. SAIC and Milbank qualify as an "enterprise."

117.     SAMIC exercised discretion on behalf of SAIC and Milbank by creating the Connect Platform, which was the primary mechanism for stealing additional premiums from policyholders. SAMIC therefore has a role in directing the affairs of SAIC and Milbank.

118.     The JANE DOE Defendants exercised discretion on behalf of SAIC and Milbank by developing, overseeing, and implementing the fraudulent scheme and then attempting to cover it up. Therefore, the JANE DOE Defendants have a role in directing the affairs of SAIC and Milbank.

119.     Through the numerous acts of mail and wire fraud detailed above, SAMIC and the JANE DOE Defendants conducted or participated in the conduct of the affairs of SAIC and Milbank through a pattern of racketeering activity.

120.     State Auto uses the Connect Platform to sell insurance in more than 30 states, therefore SAIC and Milbank's activities affect interstate commerce.

121.     The racketeering activities of SAMIC and the JANE DOE Defendants directly and proximately injured the business and property of Plaintiff and the Class. As an immediate and direct result of those racketeering activities, Plaintiff and the Class paid excessive and illegal additional premiums for B, D & E coverage upon which Defendants bore no risk.

WHEREFORE, Plaintiff and the Class demand judgment against Defendants for compensatory damages, interest, costs of suit, damages for delay, counsel fees and treble and punitive damages as provided by law.

## COUNT TWO – VIOLATION OF 18 U.S.C. § 1962(d)

### Against Defendants SAMIC and JANE DOES 1-10

122.    Plaintiff incorporates by reference the allegations in paragraphs 1-121.

123.    RICO creates a private right of action for "[a]ny person injured in his business or property by reason of a violation of [18 U.S.C. § 1962]." 18 U.S.C. § 1964(c). Under 18 U.S.C. § 1962(d), it is "unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section."

124.    An "enterprise" for purposes of RICO "includes any . . . partnership, corporation, association, or other legal entity." 18 U.S.C. § 1961(4). SAIC and Milbank are both legal entities that together form an association-in-fact enterprise joined for the purpose of selling, marketing, and administering Dwelling Fire insurance policies through the Connect Platform. SAIC and Milbank qualify as an "enterprise."

125.    State Auto uses the Connect Platform to sell insurance in more than 30 states, therefore SAIC and Milbank's activities affect interstate commerce.

126.    SAMIC and the JANE DOE Defendants are associated with SAIC and Milbank and they agreed and conspired to engage in the pattern of mail and wire fraud detailed above—a pattern of mail and wire fraud that violated 18 U.S.C. § 1962(c). This conspiracy violated 18 U.S.C. § 1962(d).

127.    Through this agreed-upon pattern of racketeering activity, Plaintiff and the Class were directly and proximately injured in their business and property. As an immediate result of

these racketeering activities, Plaintiff and the Class were duped into paying excessive additional premiums for illusory insurance coverage through the Connect Platform.

WHEREFORE, Plaintiff and the Class demand judgment against Defendants for compensatory damages, interest, costs of suit, damages for delay, counsel fees and treble and punitive damages as provided by law.

<u>**COUNT THREE – BREACH OF CONTRACT AND BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**</u>

**Against Defendants SAIC and Milbank**

128.    Plaintiff incorporates by reference the allegations in paragraphs 1-127.

129.    As described above, Plaintiff entered into numerous Dwelling Fire insurance contracts with Defendants SAIC and Milbank. A true and correct copy of Plaintiff's policy is attached hereto at Exhibit C.

130.    These contracts, like all similar insurance contracts, impose on each party a duty of good faith and fair dealing in their performance and their enforcement.

131.    Defendants are obligated by the terms of the policy to automatically provide coverage for "B. Other Structures," "D. Fair Rental Value," and "E. Additional Living Expenses." *See* Exhibit C at Sections F.1 and F.5.

132.    Defendants breached these Sections of the policies issued to Plaintiff and the Class by failing to automatically provide coverage, and instead charging illegal premiums for coverage that was already included.

133.    As detailed above, through a series of elaborate misrepresentations communicated through the Connect Platform and on each policy's Declarations Page, the Defendants duped Plaintiff into paying excessive and illegal additional premiums for B, D & E coverage that was already included with the purchase of A.

134.     Defendants SAIC and Milbank had a legal duty to act in good faith and deal fairly with the persons they purported to insure under their policies.

135.     Despite this duty, Defendants SAIC and Milbank sold illusory insurance coverage to Plaintiff Travis and other similarly situated policyholders and thus breached the contract, including the duty of good faith and fair dealing. This breach proximately caused damages to Plaintiff Travis and other similarly situated Class Members who paid additional premiums for B, D & E coverage through the Connect Platform between 2016-2021.

136.     Plaintiff Travis and other similarly situated class member policyholders have been proximately injured as a result of Defendants' breach of contract, including express breach of contract, and breach of the duty of good faith and fair dealing and are thus entitled to damages proximately caused them by said breach.

WHEREFORE, Plaintiff and the Class demand judgment against Defendants for compensatory damages, interest, costs of suit, damages for delay, counsel fees and treble and punitive damages as provided by law.

### COUNT FOUR – VIOLATION OF THE PENNSYLVANIA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW AND OTHER SIMILAR STATUTES NATIONWIDE

**Against Defendants SAMIC, SAIC, and Milbank**

137.     Plaintiff incorporates by reference the allegations in paragraphs 1-136.

138.     Defendants, acting by and through their duly authorized agents, servants, workmen or employees acting within the course and scope of their employment and on the business of said employer, made material misrepresentations of fact and fraudulent omissions concerning the nature and quality of the Policies for the sole purpose of inducing justifiable reliance by Plaintiff and members of the Class in paying the premiums for B, D & E coverage which Defendants represented would protect Plaintiff and members of the class's interests in

their rental properties, when Defendants knew that these representations were false, fraudulent and misleading. Defendants therefore have violated the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa. C.S.A. §§ 201-1, *et seq.*, and other similar state statutes nationwide.

139.    Defendant SAMIC designed and implemented the Connect Platform so that it lacked the necessary disclosures to inform brokers and consumers of the material information needed to make decisions about whether to purchase B, D & E coverage. The Connect Platform was the primary vehicle for the scheme described above in which Defendants duped policyholders and brokers into paying illegal and excessive additional premiums for illusory coverage upon which Defendants bore no risk.

140.    Defendants SAIC and Milbank sold the insurance and collected the illegal and excessive premiums from Plaintiff and other similarly situated class member policyholders.

141.    Plaintiff and members of the Class have suffered ascertainable losses of money, in the form of additional insurance premiums for B, D & E coverage, as a result of various unfair and/or deceptive acts or practices by Defendants, including but not limited to the following:

> A.  Representing that the Dwelling Fire policies have provisions, characteristics, uses or other benefits or, lack thereof, that, in fact, they did not have;
>
> B.  Marketing and advertising the Dwelling Fire policies with the intent to conceal the full coverage detailed therein;
>
> C.  Failing to comply with the terms of guarantees and/or warranties given to Plaintiff prior to, at the time of, and after, Plaintiff's purchase of the policy; and
>
> D.  Engaging in the aforementioned fraudulent and/or deceptive conduct which created a likelihood of confusion and misunderstanding.

142.     Plaintiff and members of the Class justifiably relied upon the material misrepresentations and fraudulent omissions made by Defendants concerning the nature and quality of their Dwelling Fire policies and, as a result of such reliance, suffered those damages and losses set forth above.

143.     In violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law and other similar statutes nationwide, Defendants employed fraud, deception, false promise, misrepresentation and the knowing concealment, suppression or omission of material facts in their sale, marketing, advertisement, and administration of Dwelling Fire policies sold through the Connect Platform from 2016-2021.

WHEREFORE, Plaintiff and the Class demand judgment against Defendants for compensatory damages, interest, costs of suit, damages for delay, counsel fees and treble and punitive damages as provided by law.

## <u>COUNT FIVE – UNJUST ENRICHMENT</u>

### Against Defendants SAMIC, SAIC, and Milbank

144.     Plaintiff incorporates by reference the allegations in paragraphs 1-143.

145.     Defendants SAMIC, SAIC, and Milbank have been enriched and have received a benefit as a consequence of their collection of illegal and excessive premiums for B, D & E coverage through the Connect Platform, and as a consequence of their receipt, retention, and failure to pay back the amounts by which they have been overpaid.

146.     Plaintiff, and the Plaintiff Class, conferred a benefit upon Defendants.

147.     Defendants appreciated those benefits and accepted and retained those benefits under circumstances that would render it inequitable for Defendants to retain the benefits without re-payment to Plaintiff and the Class.

148.    Plaintiff and the Class were denied a benefit as a consequence of Defendants' actions.

149.    An injustice will result if Plaintiff's and the Class's recovery from the enrichment is denied. Defendants have no legal or equitable entitlement to the money by which they have been overpaid, and in fact Plaintiff and the Class have a legal and equitable entitlement to that money. Defendants were never and not now entitled in equity or good conscience to be paid the millions of dollars by which they have been overpaid.

150.    The money in equity and good conscience should be re-paid to Plaintiff and the Class, who have a better legal and equitable right and claim to the money.

151.    Plaintiff and the Class reasonably relied on conduct and assertions of Defendants in paying the illegal and excessive premiums for B, D & E coverage through the Connect Platform.

152.    Recovery by Plaintiff and the Class would leave all parties concerned in the position they should be in but for Defendants' scheme of selling phony insurance coverage.

153.    Plaintiff and the Class have been directly and proximately injured as a result of and at the expense of Defendants' unjust enrichment.

154.    Plaintiff and the Class have no adequate remedy at law.

WHEREFORE, Plaintiff and the Class demand judgment against Defendants for compensatory damages, interest, costs of suit, damages for delay, counsel fees and treble and punitive damages as provided by law.

## COUNT SIX – MONEY HAD AND RECEIVED

### Against Defendants SAMIC, SAIC, and Milbank

155.    Plaintiff incorporates by reference the allegations in paragraphs 1-154.

156.    Defendants SAMIC, SAIC, and Milbank have in their possession money which in equity and in good conscience belongs to and ought to be paid to Plaintiff and the Class.

157.    Defendants have in their possession money that has been wrongfully diverted from its proper use by Plaintiff and the Class, and has instead fallen into the hands of a third person, Defendants, who, in equity and good conscience, have an inferior right to that money.

158.    The money had and received constitutes all premium payments for B, D & E coverage on Dwelling Fire policies purchased by Plaintiff and the Class using the Connect Platform between 2016-2021. The aforementioned money was and remains in Defendants' possession, in violation of the law.

159.    Defendants have converted money that they knew or should have known that the payment of which to them was improper.

160.    The money was paid to Defendants due to Defendants' scheme, and in return for insufficient consideration from Defendants.

161.    Defendants were aware and had actual or constructive knowledge when they received the money, and they are currently aware and have actual or constructive knowledge, that the money was procured and retained through false pretenses, and by fraudulent means.

162.    It would be inequitable, unjust, and unconscionable to allow Defendants to retain their ill-gotten gains.

163.    Recovery by Plaintiff and the Class would leave all parties concerned in the position they should be in but for Defendants' scheme of selling phony insurance coverage.

164.    Plaintiff and the Class have been directly and proximately injured as a result of Defendants' retention of the money they have wrongly received.

165.    Plaintiff and the Class have no adequate remedy at law.

WHEREFORE, Plaintiff and the Class demand judgment against Defendants for compensatory damages, interest, costs of suit, damages for delay, counsel fees and treble and punitive damages as provided by law.

### COUNT SEVEN – CONSTRUCTIVE TRUST

### Against Defendants SAMIC, SAIC, and Milbank

166.    Plaintiff incorporates by reference the allegations in paragraphs 1-165.

167.    Defendants SAMIC, SAIC, and Milbank hold title to the money by which they have been overpaid subject to an equitable duty to convey to Plaintiff and the Class because Defendants would be unjustly enriched if they were permitted to retain those funds.

168.    The specific trust *res* consists of all premium payments for B, D & E coverage on Dwelling Fire policies purchased by Plaintiff and the Class using the Connect Platform between 2016-2021, and which *res* was and remains in Defendants' possession.

169.    Defendants obtained the trust *res* by taking advantage of their relationship with Plaintiff and the Class.

170.    Plaintiff has demanded payment from Defendants of the money they hold in constructive trust, but Defendants have refused to release the funds to Plaintiff or the Class.

171.    The necessity for the imposition of a constructive trust arises from the circumstances of this case—i.e., the conduct set forth above by which Defendants sold illusory insurance coverage and then wrongfully retained the illegal premiums—which evidence fraud, undue influence, abuse of a confidential relationship, and other such circumstances suggesting unjust enrichment.

172.    Plaintiff and the Class reasonably relied on conduct and assertions of Defendants in paying the illegal and excessive premiums for B, D & E coverage through the Connect Platform.

173.    Defendants have been unjustly enriched for the reasons set forth in this complaint and because they have failed to discharge their equitable duty to convey the funds to Plaintiff and the Class.

174.    The imposition of a constructive trust is necessary to prevent unjust enrichment.

175.    Plaintiff and the Class have been directly and proximately injured as a result of Defendants' violation of their equitable duty to convey the funds to Plaintiff and the Class.

176.    Plaintiff and the Class have no adequate remedy at law.

WHEREFORE, Plaintiff and the Class demand judgment against Defendants for compensatory damages, interest, costs of suit, damages for delay, counsel fees and treble and punitive damages as provided by law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and all Class Members, demands judgment against Defendants as follows:

(a)     An order certifying the proposed Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as Class Representative and her attorneys as Class Counsel to represent the Class Members;

(b)     Ordering SAMIC and the JANE DOE Defendants to pay Plaintiff and the Class treble damages for all injuries Plaintiff and the Class have incurred to their business and property as a result of the acts of racketeering detailed above as authorized by 18 U.S.C. § 1964(c);

(c)     Ordering SAIC and Milbank to pay Plaintiff and the Class damages for all injuries Plaintiff and the Class have incurred to their business and property as a result of the Defendants' breach of contract;

(d)     Ordering SAMIC, SAIC, and Milbank to pay Plaintiff and the Class treble damages for all injuries Plaintiff and the Class have incurred to their business and property as a result of the Defendants' unfair and deceptive trade practices;

(e)     Ordering SAMIC, SAIC, and Milbank to pay Plaintiff and the Class damages for all injuries Plaintiff and the Class have incurred to their

business and property as a result of the Defendants' unjust enrichment, improper retention of money had and received, and violation of their equitable duty to convey funds to Plaintiff and the Class;

(f)      An order declaring the Defendants' conduct to be deceptive, wrongful, unfair and unconscionable;

(g)      An order entering judgment in favor of Plaintiff and the Class Members against Defendants;

(h)      Awarding Plaintiff and the Class prejudgment interest, at the rate of 6% per annum, on a joint and several liability basis against Defendants SAMIC, SAIC, and Milbank;

(i)      Declaring Defendants' scheme of selling illusory coverage through the Connect Platform to be unlawful;

(j)      Injunctive relief or an order of non-monetary relief as the Court may deem proper; and

(k)      An order awarding Plaintiff and the Class their reasonable attorneys' fees, cost and disbursement incurred as a result of this action, including but not limited to fees and costs under 18 U.S.C. § 1964(c).

## **DEMAND FOR JURY TRIAL**

Plaintiff and the Class Members hereby demand a jury trial on all claims so triable in this action.

Respectfully submitted,

*/s/ Kevin W. Fay*

Richard M. Golomb, Esquire
Kenneth J. Grunfeld, Esquire
Kevin W. Fay, Esquire
**GOLOMB SPIRT GRUNFELD, P.C.**
1835 Market Street, Suite 2900
Philadelphia, PA 19103
Phone: (215) 985-9177
Fax:    (215) 985-4169
Email: rgolomb@golomblegal.com
        kgrunfeld@golomblegal.com
        kfay@golomblegal.com
*Attorneys for Plaintiff and the Class*