IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KRISTINA TRAVIS, individually and on behalf of all others similarly situated | : : | CIVIL ACTION |
| Plaintiff | : : | NO. 5:21-cv-05395-JLS |
| vs. | : : | |
| STATE AUTOMOBILE MUTUAL INSURANCE COMPANY, INC., d/b/a STATE AUTO INSURANCE COMPANIES; MILBANK INSURANCE COMPANY; and JANE DOES 1-10 | : : : : : | JURY TRIAL DEMANDED |
| Defendants | : | |

**REPLY MEMORANDUM IN SUPPORT OF STATE AUTO AND MILBANK'S MOTION TO DISMISS PLAINTIFF'S AMENDED CLASS ACTION COMPLAINT**

As detailed below, Plaintiff avoids any meaningful response to Defendants' arguments for dismissal and retreats from the key allegations of her Amended Complaint (the "Complaint").

**1. Plaintiff Cannot Point to any Facts Supporting her "Illusory Coverage" Claim**

Plaintiff's theory of the case is that Defendants engaged in a scheme to deceive Plaintiff and the Class by using a website portal (the "Connect Platform") to fraudulently induce policyholders and their brokers into purchasing what Plaintiff repeatedly describes as "phantom" or "illusory" insurance coverage. (Compl., Dkt. 16, at ¶¶ 1, 31, 56, 60, 63, 64, 105, 112, 115, 127, 132, 134, 145, 149, 158, 188; Plaintiff's Response, Dkt. 21, at 8, 9, 10, 11, 16, 24, 32.) According to Plaintiff, the coverage she purchased was "illusory" and of "no value" (Dkt. 21, at 10) because State Auto had a "Cap Policy" which limited B, D, and E insurance coverages to those coverages already included with the purchase of Section A coverage (*i.e.*, 10% of Section A coverage for Section B coverage and 20% of Section A for Sections D and E). Plaintiff alleges that when her broker checked off the B, D, and E boxes on the Connect Platform, Plaintiff paid increased

premiums "without any corresponding enlargement of coverage or increased risk to Defendants." (Dkt. 16, ¶5.) Plaintiff's claim is summarized in her allegation that "the Cap Policy made the coverage illusory." (Dkt. 16, ¶56.)

Plaintiff's theory of the case is fatally flawed because it is contrary to the plain terms of the Policy. Sections F.1 and F.5 of the Policy show that initial coverage is provided for *Other Structures*, *Fair Rental Value*, and *Additional Living Expenses* under Coverage A in accordance with the stated liability limits (10% of A for B and 20% of A for D and E). (Dkt. 16-3, at 19-20.) The Policy also allows for additional B, D, and E coverages to be purchased for an additional premium. (*See* Dkt. 16-3, at 18-19.) There is no provision in the Policy and there are no facts alleged in the Complaint supporting the conclusion that coverage is "capped" at the initial amounts set forth in Sections F.1 and F.5 of the Policy. The Declaration Pages which Plaintiff alleges were part of the deception say nothing about a cap on coverage, and the new Declaration Pages which Plaintiff finds acceptable do nothing more than to list the other coverages set forth in Section F of the Policy. (Dkt. 19-1 at 3.) Importantly, Plaintiff does not allege that she submitted a claim under her B, D, and E coverages, let alone that Millbank capped any payments to her. Because Plaintiff's entire Complaint is predicated on Defendants' alleged scheme to induce Plaintiff and the Class to pay for "illusory" coverage resulting from the Cap Policy and because not one fact is alleged in support of those conclusions, Defendants argued that the Complaint must be dismissed.

In her Response, Plaintiff struggles to avoid dismissal and retreats from her claim that she was duped into paying for coverage that was illusory because of the Cap Policy. Ignoring the many conclusory allegations in the Complaint on this topic, she now contends that whether Defendants employed a "Cap Policy" is "irrelevant." (Dkt. 21, at 9.) She argues that the scheme could have been successful even without the Cap Policy and that "the existence of the Cap Policy is a purely extraneous issue at this stage." (*Id.*) But that is contrary to what Plaintiff has alleged – the Cap

Policy and the "illusory" coverage (supposedly created as a result of the Cap Policy) are at the heart of the Complaint and are the basis of the allegations of wrongdoing against Defendants. Indeed, Plaintiff alleged that Coverages B, D, and E were illusory because of the Cap Policy. (Dkt. 16, ¶56.) In any event, Plaintiff's key allegations consist entirely of unsupported conclusions, as Plaintiff's Response implicitly concedes and, as a result, the Complaint fails to state a cause of action and must be dismissed. (*See also* discussion in Dkt. 19, at 7-14.)

### 2. Plaintiff Does Not Overcome the Legal and Factual Shortcomings of her Civil RICO Claim (Counts I and II).

#### a. Plaintiff Still Fails to Make Out an Association-In-Fact Enterprise

Plaintiff offers nothing to bolster her bald assertion that a cognizable enterprise exists. Plaintiff argues that the association-in-fact enterprise in this case consists of Milbank and/or one or more of the Jane Doe individuals (who are alleged to be employees of State Auto) acting together as a "distinct enterprise." (Dkt. 16, at 126; Dkt. 21, at 22.) But Plaintiff still provides no facts indicating any type of coordination among Milbank or the Jane Doe individuals, as is required to allege a RICO enterprise. *See Kennedy v. Equifax,* 2019 WL 1382649, at *3 (E.D. Pa. March 27, 2019) (setting forth elements needed to allege a RICO enterprise). The Supreme Court warned of such insufficient allegations:

> It is easy to envision situations in which proof that individuals engaged in a pattern of racketeering activity would not establish the existence of an enterprise. For example, suppose that several individuals, independently and without coordination, engaged in a pattern of crimes listed as RICO predicates—for example, bribery or extortion. Proof of these patterns would not be enough to show that the individuals were members of an enterprise.

*Boyle v. United States*, 556 U.S. 938, 947, n. 4 (2009). The same is true here. Plaintiff offers no facts regarding any actual communications among the alleged enterprise's members, the enterprise's structure, their roles, or how the enterprise – as opposed to its individual members – was involved in the so-called predicate acts.

- 3 -

Plaintiff also fails to show that State Auto (the named Defendant in RICO counts) is sufficiently distinct from the "enterprise" allegedly formed by Milbank and the Jane Does to have conducted it within the meaning of section 1962(c). Plaintiff fails to distinguish the cases cited by Defendants holding that a corporation "is not distinct from its subsidiaries, relatives, agents, and affiliates for the purposes of § 1962(c)," *Blue Cross Blue Shield Association v. GlaxoSmithKline LLC*, 417 F. Supp. 3d 531, 562 (E.D. Pa. Sept. 30, 2019)(internal citation and quotation marks omitted); that "[a] RICO claim under section 1962(c) is not stated where the subsidiary merely acts on behalf of, or to the benefit of, its parents," *Lorenz v. CSX Corp.*, 1 F.3d 1406, 1412 (3d Cir. 1993); and that "a corporation acting in tandem only with its employees cannot form a RICO enterprise and be a distinct 'person' who conducts the affairs of that enterprise." *Mega Concrete, Inc. v. Smith,* 2013 WL 3716515, at *13 (E.D. Pa. July 15, 2013)(noting that "the corporation, which can act only through its employees, is truly both enterprise and person, and a claim against it cannot satisfy §1962(c)'s distinctiveness requirement," citing, among other cases, *Gasoline Sales Inc. v. Aero Oil Co*., 39 F.3d 70, 73 (3d Cir. 1994).)

Plaintiff's attempt to explain away these cases is unsuccessful. Although Plaintiff argues that Defendants' citation of *Mega Concrete* "completely misses the mark" because the court found that plaintiff sufficiently pled the existence of an enterprise (Dkt. 21, at 23), Plaintiff ignores the court's critical finding that: "In contrast to the intra-corporation enterprises discussed in *Gasoline Sales* and the other above circuit court precedent, the Smith Enterprise involves a third-party member who does not come within the other members' corporate sphere." *Mega Concrete*, 2013 WL 3716515, at *13. The inclusion of the third party in the enterprise gave the court "at least reason to doubt that distinctiveness concerns defeat Mega's RICO claim against them." *Id*. Here, in contrast to *Mega Concrete*, the alleged enterprise does *not* include any third-party members outside the corporate sphere of State Auto and distinctiveness concerns *do* defeat Plaintiff's claim.

Plaintiff's attempt to distinguish *Lorenz*, *Gasoline Sales*, and *Blue Cross Blue Shield* on the basis that they involved only corporate defendants is equally unavailing. Plaintiff's Section 1962(c) RICO claim is against State Auto and the ten Jane Does. Defendants' Motion to Dismiss seeks to have State Auto – a corporate defendant – dismissed from that claim. Since a corporation is not distinct from its subsidiaries or employees for the distinctiveness purposes of Section 1962(c), it must be dismissed from Count I.

### b. Plaintiff implicitly concedes the failure to allege a predicate act

Plaintiff does not even attempt to grapple with the fact that her conclusory allegations are contradicted by the provisions of the Policy explaining the various coverages. As discussed above, she deals with the illusory coverage/cap issue by dismissing the allegations at the center of her Complaint as "irrelevant" and "extraneous." Plaintiff also fails to shed any light on how the alleged acts of wire fraud or mail fraud took place, including whether email or the U.S. Postal Service or private or commercial interstate carriers were used (as required for mail fraud). Plaintiff's failure to describe the predicate acts of mail and wire fraud with the degree of particularity required by Rule 9(b) requires dismissal of the RICO claims.

### c. Plaintiff cannot show an injury to her business or property, let alone establish that State Auto's conduct proximately caused that injury.

Defendants' Motion to Dismiss argues that Plaintiff fails to allege any facts showing an injury to her business or property or that State Auto's conduct was the proximate cause of that injury. (Dkt. 19, at 21-22.) Dodging the issue, Plaintiff protests that this "fact-based argument" ignores and contradicts the "facts" in the Complaint. (Dkt. 21, at 24-25.) But there are no factual allegations that Plaintiff failed to receive the coverages for *Other Structures* or *Fair Rental and Additional Living Expense* (B, D, and E) included under Section F, and there are no factual allegations that she failed to receive the additional B, D, and E coverages which Plaintiff describes

as illusory. Nor does Plaintiff point to any provision in the Policy or in any statute or regulation which would render illusory the additional premiums that she paid for B, D, and E coverages. The argument the Defendants are making is based on *Plaintiff's* failure to allege any facts in support of her claim that State Auto injured her by inducing her to purchase illusory insurance coverage issued by Millbank. In the absence of such facts, the RICO claim should be dismissed.

### d. Plaintiff's Conspiracy Argument is Meritless

Plaintiff does not dispute that if her Section 1962(c) claim fails, her Section 1962(d) claim also fails. Even if Count I somehow survives, the conspiracy count should fall since "[t]he majority of courts within the Circuit agree that a corporation cannot conspire with its agents and/or employees under § 1962(d) of RICO." *District 1199P Health and Welfare Plan v. Janssen, L.P.*, 2008 WL 5413105, at *14 (D.C.D. New Jersey Dec. 23, 2008) (collecting cases); *Castle v. Crouse*, 2004 WL 257389, at *6 (E.D. Pa. Feb. 11, 2004) (concluding that a corporate entity cannot conspire with its employees). Plaintiff ignores the most recent authority in the Third Circuit on this issue (the case Plaintiff cites was decided in 1996), and instead chooses to rely on an Eleventh Circuit case for the proposition that the "favored view" is that the intra-corporate doctrine does not apply to violations of Section 1962(d). (Dkt. 21, at 26, citing *Kirwin v. Price Commc'ns Corp.*, 391 F.3d 1323, 1326-27 (11th Cir. 2004).) Although *Kirwin* observes that the circuits have divided on this question, nowhere does it say that non-application of the doctrine is the "favored" view. And the U.S. Supreme Court decision in *Cedrick Kushner Promotions, Ltd. v. King*, 533 U.S. 158 (2001), also cited by Plaintiff, did not specifically address this issue under RICO; it simply construed the distinctiveness requirement to hold that defendant Don King was a person distinct from his corporation which was alleged to be the enterprise.

Finally, Plaintiff's attempt to transform its conclusory allegations into factual allegations sufficient to support a conspiracy fails. The case from the Southern District of New York Plaintiff

cites on this this topic shows that actual *facts* must be alleged to support the inference of a conspiracy. *Angermeir v. Cohen*, 14 F. Supp. 3d 134, 155 (S.D.N.Y March 27, 2014). No such facts are alleged here, and Plaintiff's conspiracy claim should be dismissed.

### 3. Plaintiff's Claims for Breach of Contract and the Implied Covenant of Good Faith and Fair Dealing Fail (Count III)

Plaintiff contends that Defendants' Motion should be denied because it presents a fact-based argument which improperly takes issue with the well-pled allegations of the Complaint. (Dkt. 21, at 27-28.) Plaintiff has it backwards; it is the absence of factual allegations that dooms her contract claim.

Specifically, Plaintiff's contract claims fail because she is unable to point to a contractual duty in the Policy that was breached by Millbank (who issued the Policy) or State Auto (who did not issue the Policy), or to any actual damages that she incurred due to Defendants' conduct. Plaintiff does not and cannot point to any provision in the Policy which precludes policyholders from purchasing additional amounts of coverage for B, D, and E coverages or prohibits Plaintiff from recovering under those coverages. Her conclusory allegation that Defendants breached the Policy by "charging illegal premiums for coverage that was already included" (Dkt. 21, at 26, citing Dkt. 16 at ¶¶138-39) is devoid of any facts supporting that conclusion and is contradicted by the Policy. *See* discussion above; *see also Vorchheimer v. Philadelphian Owners Association*, 903 F.3d 100, 112 (3d Cir. 2018) (if Plaintiff's "own exhibits contradict her allegations in the complaint, the exhibits control"). Count III of the Complaint should be dismissed.

### 4. Plaintiff has no Right of Private Action Under the UTPCPL (Count IV)

Plaintiff concedes that in order to bring a private action under the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), the thirteen policies she purchased must have been for personal, family, or household purposes. (Dkt. 21, at 29-30.) Plaintiff argues

that she has standing to bring her claim under Section 201-9.2(a) of the UTPCPL because all of the covered properties are residential homes, not businesses, and the purpose was to create insurance coverage for a household. (*Id.*)

As a threshold matter, Plaintiff's UTPCPL claim fails because the Complaint does not allege that the purchase was for personal, family, or household purposes.[1] *Car Sense, Inc. v. American Special Risk, LLC*, 56 F. Supp. 3d 686, 696-97 (E.D. Oct. 27, 2014) (dismissing Car Sense's claim against ASR because "Car Sense has not alleged that it purchased goods for personal, family, or household purposes").

Further, Plaintiff's creative argument that her purchase was not for business purposes relies on but badly misstates the decision in *Valley Forge Towers South Condominium v. Ron-Ike Insultors, Inc.* 574 A.2d 641, 649 (Pa. Super. Ct. 1990). That case simply held that "a condominium corporation, *acting in a representative capacity*, could sue for damages" under the UTPCPL. *Balderston v. Medtronic Sofamor Danek, Inc.*, 285 F.3d 238, 241 (3d Cir. 2002) (emphasis added), citing *Valley Forge*, at 642-43.[2] *See also Car Sense*, 56 F. Supp. 3d at 698 (noting that "Car Sense has not cited any legal authority for the proposition that a car dealer can sue on behalf of its customers in a representative capacity" and "[i]ts reliance on *Valley Forge* is therefore misplaced"); *Bessemer System Federal Credit Union v. Fiserv Solutions, LLC*, 472 F. Supp. 3d 142, 178, 179 (W.D. Pa. July 14, 2020) (noting that in *Valley Forge*, the condominium association was authorized by statute to sue on behalf of condominium unit owners and "Bessemer has not set

---

[1] It is telling that Plaintiff does not make this allegation in her Amended Complaint, even though Defendants' initial motion to dismiss (that the Amended Complaint was filed in response to) also argued that she could not bring a UTPCPL claim absent an allegation that the purchase was for personal, family, or household purposes.  (Dkt. 13, at 27-28.)

[2] The other case cited by Plaintiff, *Elansari v. Best Buy*, 2019 WL 5300194 (Superior Ct. Pa. Oct. 18, 2019), is a non-precedential decision and is in any event inapposite because it involves a question of whether the purchase of a computer may have had a mixed business purpose.

forth sufficient facts to support its standing to bring suit in a representative capacity on its members' behalf"); *DiLucido v. Terminis International, Inc*. 450 Pa. Super. 393, 403-04 (1996) (rejecting UTPCPL claim and noting that plaintiff was "not attempting to bring this action as a representative of her tenants" but "as the owner of rental income property") (abrogated on other grounds by *Gregg v. Ameriprise Financial, Inc*. 245 A.3d 637, 648 (2021).) Since Plaintiff does not allege her suit was brought in a representative capacity, her UTPCPL claim must be dismissed.

### 5. Plaintiff can Muster no Facts in Support of her Fraud Claim (Count V)

As discussed in Defendants' Motion to Dismiss, Plaintiff's fraud claim is based on the wholly unsupported conclusion that Defendants induced her to purchase worthless, illusory coverage – a conclusion that is contradicted by the clear terms of the Policy. Importantly, Plaintiff offers no explanation (i.e. facts) identifying how Plaintiff was "duped" when she was relying upon the expertise of a broker and all the broker needed to do was to read the Policy. Instead, Plaintiff dodges the issue (and her inability to point to any facts supporting her theory) by arguing that Defendants are making an improper, fact-based argument. (Dkt. 21, at 31.) Likewise, Plaintiff dismisses as too "fact-based" the absence of any allegations that her broker exercised his legal duty of care by reviewing the Policy before buying it on Plaintiff's behalf. Instead, Plaintiff offers a mysterious, dark arts style argument that Defendants are improperly ignoring "the global effect of the dark patterns" which allegedly caused reasonable brokers and policy holders to purchase the additional coverage. (*Id*.) But Plaintiff's fraud claim must satisfy the particularity requirements of Rule 9(b) and fails to meet those requirements. Count V should be dismissed.

### 6. Plaintiff does not State a Claim for Unjust Enrichment, Money Had and Received, or Constructive Trust (Counts VI, VII, and VIII).

Plaintiff does not dispute that her equitable claims arise from the thirteen policies or the principle that those claims should be dismissed unless the validity of the policies is called into

question. (Dkt. 21, at 31-32.) She argues, however, that a plaintiff is entitled to rescind a contract due to fraud in the inducement and that the Complaint is replete with allegations that call into question the validity of the policies as they relate to the added premiums for illusory coverage. (*Id*.) But, as the case cited by Plaintiff on this issue states, "a victim of fraud in the inducement has two options: (1) rescind the contract, or (2) affirm the contract and sue for damages." *Chase v. Creegan*, 2017 WL 1240046, at *4 (Superior Ct. Pa. April 4, 2017) (non-precedential decision). Plaintiff has chosen the latter course; there is no allegation or prayer for relief asking that the policies be rescinded or otherwise calling into question the validity of the policies. Accordingly, Counts VI, VII, and VIII should be dismissed.

### 7. Plaintiff's Claims are Barred by the Filed Rate Doctrine

Plaintiff argues that the filed rate doctrine does not apply because "there is nothing in the Amended Complaint that implicates a rate properly filed with, and approved by, any regulatory body," and cites a case from the Southern District of Florida in support of her position. (Dkt. 21, at 32.) The Eastern District of Pennsylvania, however, has held that where the complaint boils down to an allegation of paying excessive premiums for insurance, "plaintiffs essentially challenge the DOI's rate structure." *In re Pennsylvania Title Ins. Antitrust Litigation*, 648 F.Supp.2d 663, 682 (E.D. Pa. July 21, 2009). There can be no debate that the gravamen of the Complaint is that Plaintiff paid too much for her insurance. This claim "runs directly afoul of the nonjusticiability principle, which protects the DOI's rate determinations." *Id*. As a result, the Complaint is barred by the filed rate doctrine.

WHEREFORE, for the foregoing reasons and those set forth in their Motion to Dismiss and Supporting Memorandum, Defendants State Auto and Millbank request that the Court dismiss this action and that the dismissal be with prejudice given Plaintiff's filing of an Amended Complaint in response to the Defendants' initial motion to dismiss. (Dkt. 13, 16.)

Respectfully submitted,

By:  */s/ Vlada Tasich*
     Vlada Tasich
     MARSHALL DENNEHEY WARNER
     COLEMAN & GOGGIN
     2000 Market Street, Suite 2300
     Philadelphia, Pennsylvania 19103
     Telephone: 215-575-2659
     Facsimile: 215-575-0856
     vxtasich@mdwcg.com

     James P. Gaughan
     RILEY SAFER HOLMES & CANCILA LLP
     70 West Madison Street, Suite 2900
     Chicago, Illinois 60602
     Telephone: 312.471.8700
     Facsimile:  312.471.8701
     jgaughan@rshc-law.com

     *Attorneys for Defendants*
     *State Automobile Mutual Insurance Company and*
     *Milbank Insurance Company*

## CERTIFICATE OF SERVICE

On May 24, 2022, I electronically submitted this Reply Memorandum in Support of Motion to Dismiss with the Clerk of Court for the U.S. District Court of the Eastern District of Pennsylvania, using the electronic case filing system of the court. I hereby certify that I have served the following counsel of record electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2):

Richard M. Golomb, Esquire
Kenneth J. Grunfeld, Esquire
Kevin W. Fay, Esquire
Golomb Spirt & Grunfeld, P.C.
1835 Market Street
Suite 2900
Philadelphia, PA  19103

**MARSHALL DENNEHEY WARNER COLEMAN & GOGGIN**

By: */s/ Vlada Tasich*
    Vlada Tasich
    Attorney for Defendants
    State Automobile Mutual Insurance
    Company and Milbank Insurance
    Company