IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KRISTINA TRAVIS, individually and on behalf of all others similarly situated, | : : : : CIVIL ACTION |
| v. | : NO. 21-5395 : |
| STATE AUTO MUTUAL INSURANCE COMPANY, INC., d/b/a State Auto Insurance Companies, *et al.* | : : : : |

MEMORANDUM OPINION

**Schmehl, J. /s/ JLS**                                                   February  22, 2023

**I.      INTRODUCTION**

Before the Court is the motion of Defendants, State Automobile Mutual Insurance Company ("State Auto") and Milbank Insurance Company ("Milbank") (collectively referred to as "Defendants") to dismiss the Amended Class Action Complaint filed by Plaintiff, Kristina Travis ("Plaintiff" or "Travis"). Travis filed an Amended Complaint seeking relief for alleged violations of RICO, breach of contract, violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, and fraud, as well as several other state law causes of action. Based upon the parties' submissions, Defendants' motion will be granted in part and denied in part.

**II.     BACKGROUND**

In July 2019, Travis, through her broker, purchased thirteen Dwelling Fire insurance policies from Milbank to cover properties that she owned (hereinafter the "Policy" or "Policies"). (Am. Compl., ¶¶55, 89, 95, 101.) The coverage provisions of the Policy are set forth in the section of the Policy entitled "Dwelling Property 2 – Broad Form" and apply to the location described in the Policy. Coverages A, B, D, and E of the Policy provide coverage for Dwelling, Other Structures, Fair Rental Value, and Additional Living Expense, respectively. (Am Compl.,

1

Ex. C, p. 18). Section F ("Other Coverages") describes additional coverages. Sections F.1 (Other Structures) provides that: "You may use up to 10% of the Coverage A limit of liability for loss by a Peril Insured Against to other structures described in Coverage B," and F.5 (Rental Value and Additional Living Expense) provides that: "You may use up to 20% of the Coverage A limit of liability for loss of both fair rental value as described in Coverage D and additional living expense as described in Coverage E." (*Id.*, Ex. C, pp 19-20.) Travis claims that Defendants maintained a policy to "cap" the coverage for Sections B, D, and E in the amounts included in Section A (10% for B and 20% for D and E) (Am. Compl., ¶53).

Travis asserts that Defendants developed a "scheme" designed "to trick unsuspecting consumers and their brokers into purchasing lines of phantom insurance within Dwelling Fire policies, which caused the Plaintiff policyholders to pay for coverage that was already included with the policy." (Am. Compl., ¶1.) Travis alleges that the scheme began in 2015 and involved misrepresentations communicated through Defendants' website portal and on the Declaration Page of each Dwelling Fire Policy. (*Id.*, ¶2.) She claims the scheme ended in July 2021, when State Auto updated the Connect Platform and issued revised Declaration Pages. (*Id.*, ¶9.)

Travis alleges that she and her broker were "duped" into purchasing worthless Section B, D, and E coverage through the Connect Platform. (Am. Compl., ¶¶55, 87-88, 93-94, 99-100.) She claims that the quote screen was misleading because it did not remind the broker that 10% of the Section A Dwelling coverage was available for Section B Other Structures coverage, or that 20% of the Section A Dwelling coverage was available for Sections D & E Fair Rental Value and Additional Living Expense coverage. (Am. Compl., ¶41.) Travis also alleges that the quote screen conveyed the message that if one wants his or her Dwelling Fire policy to contain Sections B, D, and E coverage, "then he or she must check the box next to these lines in order to

make sure they are included." (Am. Compl., ¶42.) Travis claims that "[t]he consequence of selecting the above check boxes for Sections B, D, & E coverage was that the total cost of the premium on the policy would increase, although in reality, there would be no corresponding increase in coverage," and that "[p]olicyholders were paying extra for coverage they were already entitled to." (*Id.*, ¶¶43-44.)

Travis alleges that beginning July 2, 2021, State Auto began disclosing on the Connect Platform that 10% of Coverage A is included for Coverage B Other Structures and 20% of Coverage A is included for Coverage D Fair Rental Value, and that sometime after July 2, 2021, the Declarations Pages on each policy were modified to provide additional disclosures about the Sections B, D & E coverages that were included with the purchase of Section A. (Am. Compl., ¶¶81, 83.) Travis claims that Defendants' acts of changing their policies and adding disclosures in July 2021 amounts to an admission that the B, D, and E check boxes never belonged on the Connect Platform in the first place and that each Declarations Page should have always included disclosures that the B, D, and E coverage comes with the purchase of A coverage. (*Id.*, ¶75.) Plaintiff also alleges that beginning on July 2, 2021, State Auto began disclosing that additional limits can be purchased for both B and D and thereby "functionally eliminated the Cap Policy in order to cover up its scheme." (*Id.*, ¶82.)

### III.   LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) governs the Court's motion to dismiss analysis. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim of relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim satisfies the plausibility standard when the facts alleged "allow[] the court to draw the reasonable inference

that the defendant is liable for the misconduct alleged." *Burtch v. Millberg Factors, Inc.*, 662 F.3d 212, 220-21 (3d Cir. 2011) (*citing Iqbal,* 556 U.S. at 678). While the plausibility standard is not "akin to a 'probability requirement,'" there nevertheless must be more than a "sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (*citing Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (*quoting Twombly*, 550 U.S. at 557).

The Court of Appeals requires us to apply a three-step analysis to a 12(b)(6) motion: (1) "[i]t must 'tak[e] note of the elements [the] plaintiff must plead to state a claim;'" (2) "it should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth;'" and, (3) "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Connelly v. Lane Construction Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (*quoting Iqbal*, 556 U.S. at 675, 679). *See Burtch*, 662 F.3d at 221; *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011); *Santiago v. Warminster Township*, 629 F.3d 121, 130 (3d Cir. 2010).

In our analysis of a motion to dismiss, the Court of Appeals allows us to also consider documents "attached to or submitted with the complaint, and any 'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case.'" *Buck v. Hampton Tp. School Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (quoting 5B Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1357 (3d ed. 2004)).

**IV.     DISCUSSION**

    **A.  RICO Claims**

Counts I and II of Plaintiff's Amended Complaint contain claims against State Auto and ten Jane Doe defendants under Sections 1962(c) and 1962(d) of RICO. Section 1962(c) of the Racketeer Influenced and Corrupt Organizations Act (RICO) prohibits "any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c). To state a claim for RICO under 1962(c), a plaintiff must plead "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity, plus an injury to 'business or property.'" *In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 269 (3d Cir. 2009) (citations omitted).

Here, Travis alleges in Count I that State Auto violated Section 1962(c) when it "exercised discretion on behalf of Milbank by creating, overseeing, and controlling the Connect Platform, which was the primary mechanism for stealing additional premiums from policyholders," and that it "therefore has a role in directing the affairs of Milbank and/or one or more of the JANE DOE Defendants." (Am. Compl., ¶124.) Through "numerous acts of mail and wire fraud," State Auto and the Jane Doe Defendants allegedly "conducted or participated in the conduct of the affairs of Milbank and/or one or more of the JANE DOE Defendants through a pattern of racketeering activity" which "directly and proximately injured the business and property of Plaintiff and the Class." (Am. Compl., ¶¶126, 128.) Count II alleges that State Auto and the Jane Does are associated with Milbank and agreed and conspired to engage in the alleged pattern of mail and wire fraud in violation of Section 1962(d) of RICO. (*Id*., ¶133.)

Upon close review of Travis' RICO allegations, I find that her RICO claims must be dismissed because she cannot plead a proper RICO enterprise. A RICO "'enterprise' includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). Travis alleges that "Milbank and/or one of more of the JANE DOE Defendants are legal entities that together form an association-in-fact enterprise joined for the purpose of selling, marketing, and administering Dwelling Fire insurance policies through the Connect Platform." (Am. Compl., ¶123.) Travis seeks to impose liability on State Auto and the Jane Does as the "persons" who conducted or participated in the affairs of the "enterprise. (*See id*., ¶126.)

In order to establish a RICO enterprise under Section 1962(c), Travis is required to demonstrate: "(1) that the enterprise consisted of 'a group of persons associated together for a common purpose of engaging in a course of conduct,' (2) that there was 'evidence of an ongoing organization, formal or informal;' (3) that there was 'evidence that the various associates function[ed] as a continuing unit;' and (4) that the defendant was separate and distinct from (instead of identical to) the purported enterprise." *Kennedy v. Equifax, Inc*., 2019 WL 1382649, at *3 (E.D. Pa. March 27, 2019), citing *United States v. Turkette,* 452 U.S. 576, 583 (1981) and *United States v. Goldin Indus., Inc.*, 219 F.3d 1268, 1270 (11th Cir. 2000).

The instant RICO claims can be disposed of by examining the requirement that the defendant be separate and distinct from the enterprise. To satisfy this distinctiveness requirement for a RICO enterprise, "a plaintiff must allege...the existence of two distinct entities: (1) a 'person' [who operates or manages the enterprise]; and (2) an 'enterprise' that is not simply the same 'person' referred to by a different name." *Mega Concrete, Inc. v. Smith*, 2013 WL 3716515, at *12 (E.D. Pa. July 15, 2013) (*citing Cedric Kushner Promotions, Ltd. V. King*, 533

U.S. 158, 161 (2001)) (internal quotations omitted). Importantly, courts in this circuit have held that a "corporation is not distinct from its subsidiaries, relatives, agents, and affiliates for the purposes of § 1962(c)." *Blue Cross Blue Shield Association v. GlaxoSmithKline LLC*, 417 F. Supp. 3d 531, 562 (E.D. Pa. Sept. 30, 2019) (internal citation and quotation marks committed). "A RICO claim under section 1962(c) is not stated where the subsidiary merely acts on behalf of, or to the benefit of, its parent." *Lorenz v. CSX Corp.*, 1 F.3d 1406, 1412 (3d Cir. 1993). A corporation generally "cannot be a defendant under section 1962(c) "for conducting an 'enterprise' consisting of its own subsidiaries . . . or consisting of the corporation itself in association with its subsidiaries or employees." *Gasoline Sales, Inc. v. Aero Oil Co.*, 39 F.3d 70, 73 (3d Cir. 1994), citing *Brittingham v. Mobil Corp.*, 943 F.2d 297, 302-303 (3d Cir. 1991). A rare exception exists to this rule when there are allegations that the defendant corporation "had a role in the racketeering activity that was distinct from the undertakings of those acting on its behalf." *Id*, citing *Brittingham*, 943 F.2d at 302; *Glessner v. Kenny*, 952 F.2d 702, 712 (3d Cir. 1991); *Lorenz*, 1 F.3d at 1413 n. 4.

    In the instant matter, Travis alleges that the "person" who operated the enterprise is State Auto and that the "enterprise" consists of Milbank and the Jane Doe defendants. Travis fails to allege that State Auto played a distinctive and separate role in the racketeering activity, and in fact, cannot do so, as Milbank is a subsidiary of State Auto. (Am. Compl., ¶22.) The same analysis holds true for the Jane Doe defendants who are alleged to be part of the enterprise, as they are all employees of State Auto. (Am. Compl., ¶¶23-24.) There is no third-party member alleged outside the sphere of State Auto that would create distinctiveness. The alleged enterprise consists solely of State Auto's subsidiary and/or its employees. Therefore, State Auto is clearly not distinct from the "enterprise" allegedly formed by Milbank and the Jane Does to have

conducted said enterprise within the meaning of Section 1962(c). Further, there are no allegations that State Auto had a "role in the racketeering activity that was distinct from the undertakings of those acting on its behalf," and therefore, the exception does not apply. Accordingly, Count I of the Amended Complaint is dismissed[1].

Travis alleges in Count II of her Amended Complaint that State Auto and the Jane Doe defendants agreed and conspired to engage in mail and wire fraud in violation of 1962(d). Under section 1962(d), "[i]t shall be unlawful for any person to conspire to violate any of the provisions of subsections (a), (b), or (c) of this section." Therefore, it follows that "[a]ny claim under section 1962(d) based on a conspiracy to violate the other subsections of section 1962 must fail if the substantive claims themselves are deficient." *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153, 1191 (3d Cir. 1993). As Travis' claim under section 1962(c) must fail, as discussed above, it follows that the Amended Complaint also fails to allege a conspiracy under §1962(d). Accordingly, Count II of the Amended Complaint is dismissed.

### B. Breach of Contract and Covenant of Good Faith and Fair Dealing

To establish a breach of contract claim under Pennsylvania law, a party must show "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract, and (3) resultant damages. *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 225 (3d Cir. 2003). In the instant matter, Defendants argue that Travis' contract claims must fail because she is unable to point to a contractual duty that was breached by Defendants, or to any actual damages that she incurred due to Defendants' conduct.

---

[1] Defendants also argue that Travis' RICO claims must fail because she fails to allege a predicate act, an injury to a business or person and/or proximate cause. As I find Plaintiff's RICO claims must fail due to her inability to allege the conduct of an enterprise, I do not reach Defendants' additional arguments.

First, it is necessary to note that there is no implied covenant of good faith and fair dealing claim separate from a breach of contract claim in Pennsylvania. *Cummings v. Allstate Ins. Co.*, 832 F. Supp. 2d 469, 473–74 (E.D. Pa. 2011); see also *JHE, Inc. v. SEPTA*, 2002 WL 1018941, at *7 (Pa. Com. Pl. May 17, 2002) (stating that a breach of the covenant of good faith is nothing more than a breach of contract claim and that separate causes of action cannot be maintained for each, even in the alternative). Therefore, Travis' claim for a breach of the implied covenant of good faith and fair dealing merges with her breach of contract claim.

The crux of Plaintiff's breach of contract claim is that Milbank and State Auto breached sections F.1 and F.5 of the policy by failing to provide the B, D, and E coverages as promised and instead illegally charged additional premiums for coverage that was already included. (Am. Compl., ¶¶ 1-7, 41-66.) Travis also alleges that by use of the Connect Platform and misrepresentations on the Declaration Pages, Defendants tricked her into purchasing coverage that she otherwise would not have bought had she been given proper disclosures. (*Id*., ¶¶138-139.) As the context of the instant motion requires me to accept the allegations contained in Plaintiff's Amended Complaint as true, I find Travis has pled sufficient facts in her breach of contract claim to survive a motion to dismiss. Plaintiff has properly alleged that Defendants violated the contractual obligations that were entered into when it sold the Policies to her. Accordingly, Defendants' motion is denied as to Count III of the Amended Complaint.

**C. Unfair Trade Practices and Consumer Protection Law**

Travis' Amended Complaint alleges that Defendants "employed fraud, deception, false promise, misrepresentation and the knowing concealment, suppression or omission of material facts in their sale, marketing, advertisement, and administration of the Dwelling Fire policies sold through the Connect Platform from 2016-2021" in violation of the Pennsylvania Unfair

Trade Practices and Consumer Protection Law. (Am. Compl., ¶ 154.) Under Pennsylvania law, plaintiffs who may pursue private actions under section 201–9.2(a) of the UTPCPL are limited to: "Any person who purchases or leases goods or services primarily for personal, family or household purposes." *My Space Preschool and Nursery, Inc. v. Capitol Indem. Corp.*, 2015 WL 1185959, at *5 (E.D. Pa. March 13, 2015). "When an insurance policy is purchased to provide coverage to a business, courts in Pennsylvania have consistently found that plaintiffs lack standing to assert a claim under the UTPCPL." *Id.* (collecting cases). Importantly, the UTPCPL is concerned solely with the purpose of the purchase, not with the actual item purchased. *Valley Forge Towers South Condominium v. Ron-Ike Insulators, Inc.*, 574 A.2d 641, 648 (Pa. Super. 1990).

Defendants argue that Travis does not allege that she purchased the insurance policies in question "primarily for personal, family or household purposes." Rather, Defendants claim that Plaintiff purchased 13 policies for 13 different rental properties owned by her for business or commercial purposes, thereby giving Travis no standing to pursue a claim under the UTPCPL. In response, Travis argues that she personally purchased the Policies to cover residential homes, not businesses and that the named insured listed on each Policy is Travis herself, not a business. (ECF No. 21, p. 22) She claims the "purpose of each purchase was to create insurance coverage for a household," and thus she has standing under the UTPCPL. (*Id.*, p. 21-22.)

A review of the Amended Complaint and its exhibits shows that Travis "is a resident of Bethlehem, Pennsylvania." (Am. Compl. ¶20.) A review of the thirteen Declaration Pages for the relevant Policies shows that they cover thirteen different properties located on Green and Halstead Streets in Allentown, Pennsylvania. (*Id.*, Ex. B.) This would indicate that Travis is not personally residing in any of the insured properties. Accordingly, the success of her UTPCPL

claim turns on whether it can be said that she was obtaining the subject insurance policies for a "household," even if she herself was not personally a member of said household[2].

Despite the creativity of Travis' argument that she is insuring a "household," she is clearly engaged in the business of renting these thirteen properties to tenants for income. She does not personally reside in any of the homes, nor does she allege that anyone in her family resides in them. It strains credulity to think that an individual who owns multiple investment properties for which she purchases insurance is the type of "person" that the UTPCPL was intended to protect. Further, courts in Pennsylvania have distinguished between residential purpose and investment purpose when evaluating UTPCPL claims in the past. See *Growall v. Maietta*, 931 A.2d 667, 676 (Pa. Super. 2007) (finding that a plaintiff could not state a claim under the UTPCLP because he purchased a property as an investment with the intent to rent it to tenants in the future, the plaintiff did not purchase the property "primarily for residential purposes"); *Lal v. Ameriquest Mortg. Co.*, 858 A.2d 119, 125 (Pa. Super. 2004) (finding that a plaintiff could not state a claim under UTPCLP because it purchased property for investment reasons, not "personal, family or household" purposes.) Travis owned thirteen different properties on two streets, which is clearly an investment or has an income-generating purpose. Therefore, any insurance she purchased on those properties would also be for investment purposes and would not fall under the UTPCPL. Accordingly, Count IV is dismissed from the Amended Complaint.

### D. Fraud

Travis also brings a fraud claim against Defendants, alleging that they "made a number of materially misleading statements and/or omissions in the advertising, marketing, sale, and administration of their Dwelling Fire policies," and that Travis "reasonably relied on these

---

[2] The UTPCPL itself fails to define "household." Further, I have located no caselaw in which a Pennsylvania court has defined "household" in reference to the UTPCPL.

misrepresentations and/or omissions to form the mistaken belief that their money was being accepted by Defendants in exchange for authentic insurance coverage." (Am. Compl., ¶¶156-157.) Defendants argue that Travis' fraud claim should be dismissed because it fails to meet the particularity requirement of Federal Rule of Civil Procedure 9(b).

Under Pennsylvania law, the elements of a fraud action are: "(1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance." *Estate of Quigley v. East Bay Management, Inc.*, 2014 WL 2765135, at **5-6 (E.D. Pa. June 18, 2014), *citing Freeman v. Pittsburgh Glass Works, LLC*, 709 F.3d 240, 257 (3d Cir. 2013). In addition, a fraud claim must meet what the Third Circuit has described as the "stringent pleading restrictions" of Federal Rule of Civil Procedure 9(b), which include stating with particularity the circumstances constituting fraud or mistake. *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007). "To satisfy this standard, the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Id., citing Lum v. Bank of America*, 361 F.3d 217, 224 (3d Cir. 2004).

In the instant matter, the Amended Complaint sets forth the date and content of each alleged fraudulent transaction (¶¶ 86-104), explains why the broker was misled by the Connect Platform (¶¶ 39-47), specifies the alleged lack of pertinent disclosures and affirmative material misrepresentations on the Declarations Pages (¶¶ 48-66), and identifies facts that substantiate Plaintiff's allegations that she bought coverage that she did not want and did not need (¶¶ 67-85). The Amended Complaint also explains the purpose of each misrepresentation and omission

within the overall fraud. I find that the Amended Complaint contains sufficient factual allegations to satisfy the pleading requirements of Rule 9(b), and therefore, Defendants' motion is denied as to Count V.

### E.  Unjust Enrichment, Money Had and Received, and Constructive Trust

Travis sets forth a claim for unjust enrichment, alleging that "Defendants have been enriched and have received a benefit as a consequence of their collection of illegal and excessive premiums for B, D & E coverage through the Connect Platform, and as a consequence of their receipt, retention and failure to pay back the amounts by which they have been overpaid." (Am. Compl., ¶¶ 162, 163-171.)

The doctrine of unjust enrichment is "inapplicable when the relationship between parties is founded on a written agreement or express contract." *Conquest v. WMC Mortgage Corp.*, 247 F.Supp.3d 618, 643 (E.D. Pa. Mar. 30, 2017) (internal citations and quotations omitted); see also *Benner v. Bank of America, NA*, 917 F.Supp.2d 338, 360 (E.D. Pa. Jan. 7, 2013). Plaintiff's claim for unjust enrichment fails because her claims are based on written contracts, specifically the insurance policies in question. While it is true that a party is not precluded from pleading both theories as alternative avenues for relief, *Patel v. Patel*, 2018 WL 3642417, at *6 (E.D. Pa. Aug. 1, 2018) (internal citations omitted), recovery under a theory of unjust enrichment is only allowed "**where an express contract cannot be proven.**" *Id.* (emphasis included in original, internal citations and quotation marks omitted). Travis however, has not pled any facts questioning the validity and/or applicability of the Policies in question, nor does her Amended Complaint request rescission of the Policies. Accordingly, I will grant Defendants' motion to dismiss the unjust enrichment claim, as the parties' relationship in this matter is clearly founded upon written agreements.

Under Pennsylvania law, "[a] cause of action for money had and received is a claim by which the plaintiff seeks to recover money paid to the defendant by mistake or under compulsion, or where the consideration was insufficient." *Patel*, 2018 WL 3642417, at *8. In this matter, Travis claims that Defendants have in their possession money that has been wrongfully diverted from its proper use because of the scheme alleged in the Amended Complaint, and which belongs to and ought to be paid to Plaintiff. (Am. Compl., ¶¶ 172-182.)

Much like her unjust enrichment claim, Travis' claim for money had and received is precluded by the existence of the Policies. *Patel*, 2018 WL 364217 at *8 (stating that Pennsylvania "recognizes some claims for money had and received where the money was paid pursuant to an express contract and that contract is found to be void.) As Travis has failed to dispute the validity of the Policies, this claim is barred and I will grant Defendants' motion to dismiss Count VII of the Amended Complaint.

Lastly, under Pennsylvania law, "'[a] constructive trust arises where a person who holds title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it.'" *Conquest v. WMC Mortgage Corp.*, 247 F. Supp. 3d at 644, quoting *Pierro v. Pierro*, 264 A.2d 692, 696 (Pa. 1970). "[A] constructive trust works in tandem with unjust enrichment, and for a constructive trust to be plausible, the elements of unjust enrichment must be adequately pled." *Id*. (internal citations omitted). Since Travis does not state a claim for unjust enrichment, Count VIII requesting the imposition of a constructive trust on Defendants must also fail.

V. **CONCLUSION**

For the foregoing reasons, Defendants' Motion to Dismiss is granted in part and denied in part. Defendants' motion is granted as to Counts I, II, IV, VI, VII and VIII and said counts are

dismissed from the Amended Complaint with prejudice. Defendants' motion is denied as to Counts III and V of the Amended Complaint.